Mohamed Karim v. Dillard TX Four-Point. Mr. Tanner. Yes, Your Honor. You may proceed. May I please the court? On behalf of Plaintiff Mohamed Karim and Ebony Karim and Jasir Karim, my name is Henry Tanner. The facts of this case show that but for Dillard's interference, the Karim family would have made a purchase at Dillard's on July 24th, 2022. And therefore, the family had a contractual interest under Section 1981. The district court acknowledged that Plaintiff Mohamed had a desire to buy. It is undisputed that the father tried on and continued wearing one of the outfits that he intended to purchase while his family selected additional items to purchase. Dillard's even admitted on page 20 of its brief that the father was in the process of making his purchase when his family was called the effing N-word. Therefore, because the family intended to make a purchase and took steps in furtherance of that attempt and decided to purchase specific items, they had a contractual interest. Your issue is there's an issue of fact or do you think the district court narrowed Arguello and made a legal error? It's a fact issue, right? You just think there is an issue of fact to get past summary judgment? Both, Your Honor. It is an issue of fact. It is an intensely fact-based determination. Whether there was a tangible intent to purchase? Yes, Your Honor. But there also has to have been, Dillard's has to have thwarted the ability to have made the contract. That's right. How did that happen here? Well, Dillard's thwarted the ability to make the contract when its 20-year employee, Homer Brewer, referred to my client's son, 11-year-old son, as the effing N-word. He looked him square in the eye and said, you effing N-word. That is outrageous. And he was fired and should have been. But you've got this case, Arguello, where the same things happened. There was racist or insulting commentary or whatever, I guess, between the clerk and the daughter, maybe. And the father basically left the beer on the counter and said, I'm not buying it. And what we held was that the sale wasn't thwarted. He abandoned the sale. So it can't just be the offensive comment that thwarted the contract. Well, true, Your Honor, it's not an offensive conduct, but Arguello is not similar to this case. Arguello, the father abandoned the purchase before the clerk ever became racist. The father left the store simply because the clerk was rude about a licensing issue, excuse me, identification issue. The daughter wanted to purchase beer, and so the clerk was rude about the identification. After the father abandoned the purchase and after the daughter completed her purchase, the clerk became racist. And in Arguello… Well, it says, I mean, Arguello says that the plaintiff has to have been actually prevented and not merely deterred. I would be deterred, too, if I was treated the way your clients were treated. It's outrageous. But was that enough? They have to have been thwarted. He could have gone to another sales associate and paid for his clothes, right? Well, that's true, Your Honor. It has to be thwarted. But it is clear here that there was more than just a rude comment. First, no reasonable person would proceed to hand any clerk money when they called you an effing N-word. But there were other clerks in the store. Then that can be taken up under Green v. Dillard's. In Green v. Dillard's, the second clerk offered to assist a couple who had already made a purchase. She offered to assist a couple to purchase a wristwatch. But the first clerk had called the man effing N-word along with his wife. And so they decided to leave. The court still found in favor of the couple, the Green couple. Right. The circuits are in a little disarray on both points. You've got a win on both. That there's a fact issue, right, in terms of attempt to buy, but also fact issue as to thwarting, interfering. And did you want to list where you see the fact issues maybe with that second one first? In other words, we have Green and the other person saying, I wouldn't have bought. Right. Right. Well, the court misapplied Arguello. Arguello does not focus on pre-contract formation. Arguello is all about post-contract formation. There is no case cited by defendant where a racist attack occurred before a purchase. And the clerk, excuse me, and the clerk offered assistance, excuse me, there is no case cited by defendant where a racist attack occurred before a purchase was made. Second, Arguello does not focus on pre-contract formation.  And the clerk says that is in itself thwarting the ability to enter the contract. Well, the Green case says that. And hopefully this case will say that. But here we have much more. Anything besides Green? No, Your Honor. Where there's just the ething in word, we don't have that. But in this case, we have much more than the ething in word. I thought that's what you were going to say. And that's what I'm getting to. Sorry, Your Honor. So in this case, we have the store clerk, Homer Brewer, referring to the family as the MFers. He followed them throughout the store mumbling and groaning under his breath. There was also an officer, armed officer, bird-dogging and grilling my client, intimidating him while this whole ordeal occurred. And then that same armed officer escorted the entire family out the store. But you've got the exchange between Brewer and your client that goes on, that was videoed and posted or whatever. It was videoed for like, what, three minutes or so. He's very measured. He's telling him how outrageous it was. He's lecturing him about values and things like that. I mean, it doesn't sound like he was intimidated or thwarted from doing anything in terms of remaining in the store. I mean, is your argument that it was just so hostile in there, he had to get out for his safety and get his family out of there? But he didn't do that right away. Well, that's part of the argument. There's an instinctive parental nature to protect your son.  And that's what he was focused on. And as African-Americans, there's an instinctive nature for us to survive any encounter that we might come into with regard to race. And I guess I want to make sure I understand the facts. After the son reported to his father what had occurred, because I thought you mentioned armed security. Was there a security guard or somebody in the store who was armed? Off-duty police officer. Okay. Did he work for Dillard's? Yes, sir. And so tell me about his conduct after the son made the report to your client. What was the officer's conduct? The conduct of the officer was standing there with oversight of the entire situation. And his threat, his stare to my client said, you bet not get out of place because I am here to keep you in your place. And that is the conduct. He said that? No, that's what the conduct said to my client. That's what my client understood by the stare of this armed security officer. So I guess your position is no one would deny that there was a thwarting if he pulled his gun. But here we have, I think that's correct. We'll find out. Opposing counsel might. But here he's staring and we have the mother and the son saying he was threatening, intimidating us, and escorted us out. You can't complete a sale if a police officer escorts you out. He denies that, right? He says I didn't even follow them. And therefore, is your position, that's just an issue of fact? It is an issue of fact. And the 11-year-old boy said that he was crying and in fear for his life while going up the escalator with his father as they left the Dillard's. And so, to be clear, I don't intend to whitewash the F in N word. I don't believe no reasonable person in their right mind would hand over any money to anyone after being referred to as the F in N word. Opposing counsel cites the Lopez v. Target case wherein a Hispanic customer goes to a register and the clerk refuses to serve him. Twice. But he goes to a different register. That clerk never made a racial attack against the Hispanic customer. Remind me, because your client was brave enough to demand to speak to the manager. That's right. Did the manager say we'd like to still make the sale? No. In green, the second clerk still offered to make the sale and they left. Here, the manager admitted in her deposition testimony she had no idea what to do. She was completely shocked. She also admitted that she would not expect for the Kareem family to go through with the sale. The store manager equally admitted he would not expect anyone to go through with the sale. So they're either being thwarted or prevented from entering the contract. Well, the thwart is, and let's be clear, we're talking about a contract so we're dealing with mental capacity. The thwart is the shocking, triggering moment of being referred to as the F in N word. Section 1981 is based on blacks being treated as less than human. As F in N words. This goes to the heart of the law. And so when you call someone that, those are fighting words. And Plaintiff Muhammad said that in the video. He said there is nobody here that can stop me to get on your ASS if I wanted to. So this situation was very hostile and my client should be commended for keeping his cool, not punished for the same. I just want to make sure I understand the facts afterwards. We talked a little bit about the officer. Did your client leave the store wearing the clothes that he had tried on? That's right, Your Honor. And then return the next day to pay for those clothes? Out of obligation. He did not want to be accused of stealing. And that clearly shows a desire to buy. But not only that, the family was there for a back to school sale. Dillard's was having a large liquidation sale that the store manager admitted would entice the family to make a huge purchase. The family had done so for 20 years. Shopped at Dillard's for back to school clothes. So it's very clear. The facts clearly show that. But for the interference, the Karim family would have made a purchase that day. This is back on the attempt to purchase bra. Yes. And for the interference, we have more than just the F-ing N-word. And so what you're looking for is a thwart. And what contributes a thwart? Anything that stops the sale of the merchandise. And I think we have that here. Are you saying that on the thwart element, we would create a split if we ruled against you with the Eighth Circuit and its Green case? If we ruled against you and said this doesn't even create a fact issue of thwarting, would that be a conflict with the Eighth Circuit Green case? Not necessarily because the facts were different. Each case rises and falls on its own set of facts. It was not just the N-word there. But the court did suggest that because of the inaction of Dillard's, that could also infer that the sale was thwarted. No Dillard's employee said, Plaintiffs Muhammad and Ebony, can we assist you now that we've dealt with this situation? No one offered to wring up the clothes that he even wore on his back. And in fact, the police officer was there and he escorted them out while he had unpurchased merchandise on. That's clearly ironic. Why would a police officer allow someone to leave a store without purchasing merchandise? And so, based on my client's understanding and based on the facts of this case, when they were referred to as F-ing N-word, among other things, and when the police officer escorted them out, it was clear that they weren't welcome and they were threatened. Was on his body or did he have a Dillard's bag with him or both? He wore the clothes on his body. Did he have a Dillard's bag also or no? I think he had a Dillard's bag in a video, but we found out that he definitely did not make a purchase that day. And so, I want to be very clear what we are not arguing. We are not arguing for a general cause of harassment or discrimination. We are arguing for, to not be discriminated against while attempting to make a purchase. Do we need to and are you arguing that we take a bright line that when someone takes something off the rack and tries it on, that alone is an attempt? Do we have to decide that? It doesn't need to be a bright line. It's always factually based because someone could take something off the rack just to try it on and they have no intent to purchase it. Okay, you agree with that. Right. Here, we had an intent to purchase. Because he not only tried it on, but he told his wife, I want to buy it. They made a decision to buy and selected additional items. And so, it's a question of fact. Once you have intent to purchase, I think you begin the contractual process. But, once you have an intent plus an additional step, your contractual interest goes stronger. All the way up until you actually ask to buy or payment is requested to be tendered. And so, as the court asked earlier, I'll posit the same question. What actions are enough to have protection under the law when attempting to make a purchase? Thank you. Thank you, counsel. Mr. Wallace. Yes, Your Honor. You may proceed. On behalf of Applee Dillards. The law does not create justice for every wrongdoing that occurs. Section 1981 is a statute that is narrowly defined to prohibit discrimination in the making and enforcement of contracts. That's it. It is not designed as a general discrimination statute as the court was probing opposing counsel on this. They seem to be wanting to do. Dillards is asking this court to affirm the judgment of the district court. And in doing so, uphold decades of precedence that section 1981 is strictly confined to preventing racial discrimination in the making and enforcement of contracts. All right. But I guess, are we traveling under Arguello? Are we traveling under Arguello? Our Arguello case? I'm sorry. Are we? Arguello versus Conoco. Are we traveling under that case? I'd ask counsel opposite about that. We are. I mean, in our opinion, we are right on top of Arguello. The facts match up. So I guess the question is, presume that there was an intent to purchase. They took clothes into the fitting room. He was trying on clothes. I think he said in his video that he was going to purchase the clothes or wanted to make a purchase. So the question then is, is there evidence that the contract was thwarted by Dillards? And you've got the representations made by Mr. Brewer and then you've got this police officer. Isn't that enough to create a fact issue on that point? It just makes you understand your hypothetical. Are you saying we're assuming there's a contract interest that's been created in your scenario? There's an intent to buy some things. There's definite intent to buy those items that he was trying on and wearing. Okay. The outward manifestation that we look for, that Arguello talks about, for example, if we're assuming that there was a contract interest created based on an outward manifestation to Dillards to purchase, there's still no thwart. That can't mean just they have to outright refuse. Right? In Arguello, they did purchase then. Here, they've got to come back, drive all the way to North Park the next day. So wouldn't you say it's still thwarting if you say all blacks have to go to the end of the line, whites get served first? That's still thwarting, isn't it? So Arguello— Is that still thwarting? If you do make the—you allow the purchase, but you tell the blacks they've got to go to the back of the line. But the blacks can still purchase under your scenario? Yeah. I mean, if they can still purchase, what Arguello tells us— If they can still purchase, you haven't thwarted them if you say we'll take the whites first? That's discrimination, but you're not preventing them from purchasing. Arguello uses the exact word. Is that person, is the shopper being prevented from purchasing? I'm not suggesting in any way, shape, or form that under your hypothetical— Okay, black people have to take the flight tomorrow. Not thwarted in their contract? Well, under the flight scenario, I mean— Well, that's this scenario. They had to come back the next day. But they weren't thwarted the previous day, Your Honor. What if they—the guy, Officer Doherty—is his name Doherty? Doherty, I believe. If he pulled his gun, that's thwarting? If he pulls his gun and points it at them, perhaps— Any pulling of the gun. You would agree that's thwarted purchase. No one's going to stay and buy with a gun. What if he'd said, you know, I'm going to ask you to leave? Sure. That's thwarting too? That would be thwarting under the detention— Okay, so why is escorting out not thwarting? So the undisputed evidence in this case is that Officer Doherty never talked to them. Now, I asked you escorting out. Isn't it true that the mother and the son both deposition testimony he escorted us out? If that's true, there's an issue of fact. Well, Your Honor, in terms of the phraseology of escort, he was 10 to 15 feet behind them. No, I'm just saying we have two witnesses that say he physically escorted us out. Then we have him saying opposite. I never even followed them. How is that not a fact issue? Well, because under the detention cases we have, you look at the manifestation of detention that we have in the other cases. We have inspection. We have accused of shoplifting. We have taken to the sales office. We have booked and we have handcuffed. As we have in Morrison. So again, gun drawn, yes. Ask to leave, yes. Escort, not. So perhaps there's a fact issue on that discrete point. However, there's no fact issue on thwart as a whole. Someone escorts me out of the courthouse. I'm thwarted from being in the courthouse. But they walked out, Your Honor, voluntarily. No, they said they didn't. He said they did, but they said they didn't. When you say they, you mean the mother and the son? The mother and the son, both. I read it. They said, you know, intimidating stare, 6'1 guy, white male with a Glock, wearing a band, and he escorts us out. I see that as sort of end of story at the fact. I mean, you may be right on attempt to purchase or not, which is a separate issue. Yes. What's your case that when a police officer escorts people out, that's not thwarting their purchase? Well, what I didn't, again, we may be quibbling over the definition of an escort. No, I'm quibbling over facts. I'm quibbling over facts. Pardon? I'm quibbling over facts. If I'm in a store trying to buy something and I feel that a security officer armed to the teeth has escorted me out, I can't see that that's not at least a fact issue that I wasn't able to finish my purchase. When we're talking about escort out, we have, again, escort, it can be done in a number of different ways. Are you that to the jury? And isn't it true that everyone involved, both sides, the two people for Dillard's, and certainly the Kareem's, all agreed they would never finish the purchase once the N-word was used? Is there anyone in this entire scenario that thought, oh, no, he should have purchased? Anyone? So this is not the standard for 1981 is not what? I'm just asking you to answer that question. Isn't it remarkable that even the Dillard's all up and down said I wouldn't finish the purchase if someone? Yes, you are. That's human nature. Okay. And isn't it also true that the wife, Ebony, said he wanted to purchase it? And we know he comes back. So it sounds like unless you think he's a thief, he was going to purchase it, right? If I walk out of something with property, unless you're calling me a thief, clearly, and I come back, that suggests I wanted to purchase it. But day one, he did not. You have to manifest that purchasing intent to the retailer. Okay. What's your case that says you have to manifest it to the retailer? Yes, because it's a tangible attempt to purchase, which is. But he said it to his wife right there. Yes. Before he sees his son sobbing. Right. But. So that sounds like his intent to purchase. But under contract law, and Arguello walks through this, under contract law, you have to make a tangible attempt to purchase, which is an outward manifestation. But you've got to offer evidence of a tangible attempt to contract. It doesn't say that it's got to be communicated necessarily, does it? Under contract law, there's no attempt to contract if I don't tell the person I want to buy the item from. Well, wait a minute now. You're in the store. You're picking out clothes. You're trying them on. You're talking to your wife about it. And you've got your family there, back to school, whatever the time frame is, a big sale on. I mean, at some level, I don't know that I have to go up to a Dillard's employee and say, you know, I'm here to try on clothes, and I think I'm going to make a purchase if everything fits and looks good. That's not how that works. I mean, in other words, I think the evidence, the tangible evidence that there's an intent to contract can come in the way the plaintiff here has done so. Under Arguello, and I believe it's Hager, they talk about in the retail context in this circuit, we're looking for a discrete transaction for a retail purchase. But not the first prong, just the tangible intent to contract. But there's a distinction between browsing and communicating. I want to participate with you in a discrete purchase. You just jumped to communicating that. I don't see that in Arguello. It just says there's got to be evidence of a tangible attempt to contract. Well, a tangible attempt, well, if you're not communicating that to the person that you are contracting with, that you hope to contract with, there's no, that's not a tangible attempt. Well, they never got that far because they were called what I think our court has called the most offensive word in the English language. Yes. How far are they supposed to persist? Well, we know a couple thoughts there. On Arguello, we had from the moment they walked in the Conoco store, racially charged conduct and language. It didn't just start when Govia disengaged from his purchase of the beer, his shopping for the beer, however you want to characterize it. They talk about from the moment they walked in, they were treated differently. They were singled out. Even Judge Lynn in the decision said from the moment they walked in the store, there was racially charged conduct. But there he left the beer on the counter and said, keep your beer, I'm leaving. He did it voluntarily. There wasn't a security guard sort of sitting there or standing there behind them glaring. I mean, in other words, the plaintiffs have been called this word. Their kid is called this word. Kid, I think, is crying at some point in the game. And then the security guard comes behind them and is basically intimidating them. They say that he's intimidating them. I mean, at some level, isn't that enough to distinguish this case from Arguello? Your Honor, it's not enough. When we're looking at a thwart, we're looking at the different courts use different language. Some of them use block. Some of them use prevent. Thwart is another one, where you're taking agency away from the shopper. It's not a reasonable person standard. It is, have you taken agency away from the shopper? The classic thwarts are, I was detained. I was accused of shoplifting. I was put in the sales office. Or I was handcuffed, like in Morrison. Morrison was handcuffed. Or where agency is taken away because the salespeople simply won't serve you. I can agree. Here is any— And I guess the question is constructively, how much do they have to endure constructively being prevented by being called what they were called, by being escorted out of the store? How much do they have to endure before they're thwarted? Well, all I can rely on, Your Honor, is the case law that we have before us. I can't speak in hypotheticals. All I can say is, here's what the case— Well, I don't think that is the other Dillard's case that he's citing, Green v. Dillard's, the 8th Circuit case. Pardon? Green v. Dillard's, Dillard's, another Dillard's case. Yes. Well, speak to that. I mean, that is case law. In that case, we had a salesperson, as I recall, a salesperson who—so we have the utterance made. We have a salesperson who is saying, I'm not going to serve you. And then, as I recall, they try to go to another cash register. Hey, you don't serve them either. So we had agency—they were attempting to take agency away from them by saying, your money is no good here. We're not going to make a—we're not going to allow you to make a purchase. So we had the N-word plus we had, and I think we also had some aggressive surveillance in that case. So I would distinguish it from this case. Aggressive surveillance is more coercive than an armed guard with a Glock who escorts you out. The surveillance cam is somehow more coercive than that? No fact issue there? We—I mean, Green, though, was an accumulation of many things. Here we had the word, and then we had the security guard, which, again, did not— We just pretend that didn't—they didn't say that? It's not the standard under 19-A-1. It's standard under 19-A-1, isn't it? And like I said, we even know Ebony said—he looked at her and said, I want to buy it. Why do we just blind ourselves to those facts? Those seem to suggest—and then he walks out with it, and he's not a thief. So it sure looks like he's going to purchase. Low and bold, the next day he comes back and purchases. Sounds like it was thwarted day one, not the next day. Again, Your Honor, he was thwarted day one. I want to go back to he never made— Did the manager, when he did complain, because he had the fortitude to stay and complain, did the manager said, I'd like to still make that purchase? He had not made—he had not made the outward expression of, here is what I want to buy. Here are the two shirts. Here are the three pairs of pants. It is incumbent on the person bringing a claim under 19-A-1 to identify what they wanted to buy. After you have called me what you called me, I still want to make a deal with you? That's incumbent on them? It's not incumbent on the racist to say, hey, we'd still like to sell it, and I'll give you a credit? That's your theory? It's not a reasonable man's standard. If we look back at Aguayo, there's racially charged commentary back and forth. But she buys it. With the Govia. She buys, but he abandons. So in our case, Mr. Krim is Govia because he abandoned. Do you have good reason? It's a reasonable—if you want to look at a reasonable man's standard, Govia. But he hadn't bought Govia until before the slurs against Aguayo. So again— The timing doesn't work out. It does work out, Your Honor. And the opinion states from the moment they walked in, they were singled out, they were treated differently, and then he gets—as the commentary gets more heated, he gets more agitated, and then he walks out. But there's no question in the opinion that there was conduct toward the daughter, and maybe him, that was discriminatory in its animus. And Judge Lynn even talked about that in the opinion. That was her finding as well. All right, so you must have a—for there to be a cognizant claimant in 1981, you must have a contract interest that is then tied to discrimination. And that's what we've been talking about here, the tangible attempt to purchase specific items in a discrete transaction. That's what's required, which we don't have here with the Karems. Again, second reason this Court should affirm the district court's ruling is we have no tangible attempt to purchase. We've gone through that. And then the thwart. And the thwart has to—the thwart—if there is no tangible attempt to purchase and, therefore, no contract interest in vote, then there can be no thwart. All you're doing at that point is thwarting browsing. And at the time that the very offensive word was uttered and Mr. Krim came out of the dressing room, they were browsing. He and his wife had not picked out specific items, pants, shirts, whatever, and said, we're going to buy these and communicate anything of that nature to Dillard's, which is what's required. They were in all respects browsing. To take opposing counsel's version of events, he called it pre-formation contract. He said there are no cases for that. The reason there are no cases for that is because you have to have a contract interest for there to even be a thwart. Under their scenario, we thwarted browsing. I do think browsing pretty differently. You're walking through a mall. Here you browse. You see something. You take it off. You put it on in the dressing room. You tell your spouse, I want to buy it. That's a lot further down the contractual train. Well, looking at what the district court did, the district court focused on the first problem. Was there an outward manifestation of an intent to contract or an attempt? The court really didn't. The court just presumed that it was therefore thwarted, or it couldn't have been thwarted because there was nothing to thwart. If we disagree on the first point, don't we have to reverse altogether? No, not at all. I mean, the court read and relied on Arguello as well. But for the first point, not the second. I don't know that that's necessarily the case. I don't know that that's necessarily the case, Your Honor, on the second point. I mean, the court clearly relied on Arguello. She cites Arguello in the last line of the decision and found, based on the similarity of facts between our case and the Arguello case, that there was no tangible attempt to purchase and likewise found that there was no thwart. Again, offensive facts in both cases, not apologizing for that, acknowledging that, but she compared the level of animus to the level of animus here and determined that there was no thwart. And that just like Govia, Mr. Karim abandoned the transaction. And as the court pointed out when talking to opposing counsel, Mr. Karim had the state of mind that he wanted to right a social wrong and he stayed for several minutes and talked very respectfully to the salesman who uttered the offensive word. He was not shrinking, walking out in tears or anything like that. He had the state of mind and he likewise had the state of mind, as the court pointed out a few moments ago, to go to another register if he so chose to make the purchase. And I don't want to overlook the fact they came back and made the purchase the next day. So under Arguello, under Lewis, if you make the purchase then you don't have a claim anymore. That's a separate argument. That's saying they completed the transaction as opposed to he abandoned it. Well, he abandoned on day one and then consummated on day two. Loses either side of the coin. Well, However you flip the coin, he should have just plowed through even though the officer is right there with the Glock. Well, yes. He shouldn't have come back and paid for what he walked out for. Based on the case law we have now, he should have plowed through. Again, the detention cases we've got, the police cases, are invariably require engagement by the police officer or security guard, accusation of shoplifting, detention in the sales office, things like that. Christian wasn't a detention case. Pardon? They didn't detain him. They just said, I'd like you to leave. That's true. That's under a different standard though. Pardon? Don't say detention is required. I'm not saying it's required. I'm just saying it's an example of the type of security guard police engagement that typically raises the specter of a thwart because you're taking the agency away from the person. Again, under this case, undisputed, the officer never spoke to them, never grabbed them, never touched them, never made any communication with them. They say they were escorted out. But he's following them out at best, assuming the facts as they present them. So about 26 seconds left. Again, I'll just close with this. This case is on all points with Arguello. This court should therefore follow Arguello and the prevailing case along the Fifth Circuit by affirming Judge Lynn's ruling in the district court. Thank you very much. Thank you, counsel. Rebuttal? There is no case that prohibits the Corim family from having a successful claim under Section 1981. The Arguello case, the father did not abandon the purchase after hearing any racist remarks. He abandoned the purchase because the clerk was being rude to his daughter. And most of what defendant sites and the lower court relied on is contained in a footnote. Also, Arguello states that in the retail context, it's a discrete transaction. It's not a continuous transaction. So Dillard's argument that they came back the next day to make the purchase runs against Arguello. I don't remember as well as Judge Wilson did. So Judge Lynn never really made a ruling on the thwart element? Her case turned on the court. No. Judge Lynn, the lower court basically said because there was no attempt to purchase, therefore there could be no thwart. But Judge Lynn basically wanted some magic words to be said. But as we know in the Green case. On attempt. Right. As we know in the Green case, the other store clerk offered to continue with the purchase. And they still left and had a successful claim. Henderson v. Office Max, I think is a Western District, Louisiana case, he walked into the Office Max store, didn't say anything. He may have asked for help. But he had a successful claim. Excuse me, he had a claim that survived summary judgment. And so you don't need any bright line rules or any specific clerk. But you agree, I mean, again, just focusing on what the district court did decide. So just asking if there was a tangible intent to buy. You wouldn't dispute. If you're just in the store and someone yells the N word, not enough. So browsing, they're right. Exactly. So even without a bright line rule, just quickly in your time left, list the facts that are at least in dispute as to more than browsing. Well, you're exactly right, Your Honor. On the opposite end of the spectrum, it's just mall browsing. Right. At the middle of the spectrum is intent. Once you have intent, any steps that you take after intent is in furtherance of an attempt to contract. And so the facts that would suggest that are it was a hot summer day in the south. And the plaintiff, Muhammad, wanted to get out of those clothes. He was baking like a potato. And so he went to the men's department. They took a beeline to the men's department. He began trying on clothes that he was going to wear that day. And he had his wife and son select additional items to the style that he liked. He told his wife, I like this shirt, I think with the pocket, maybe it was without the pocket. He said, let's get more of these shirts. I want to buy these. And so. He said, I want to buy these. Right. Those facts, the intent plus the several additional steps clearly show an attempt to purchase. A reasonable jury could conclude as much. Did he take off clothes to try on the clothes in the dressing room? I assume so. What happened to those clothes? Maybe those were in the dealer's bag that he was waving around. But I don't know, Your Honor. Is counsel right that even if he says, I want to buy them, which sure sounds like you're getting close to offering acceptance, it's got to be communicated to the dealers? He's absolutely wrong. Like I said, the Henderson v. Office Depot Incorporated, the plaintiff there survived summary judgment because the clerk failed to assist him. He never said anything. And then Lewis v. Dillard's, that's the lipstick request. She didn't say she wanted to purchase the lipstick. She just asked for the lipstick. And so you have to. And it's helpful to know the case law. What about the case law? Do you have case law supporting the opposite side? The fact that everyone at Dillard's agreed they wouldn't buy. I'm sorry, Your Honor? Everyone at Dillard's agreed they wouldn't buy once the incidents had occurred as they had. Is it relevant what Dillard itself, their employees? Yeah, that's in Green v. Dillard's. They looked at the inaction and the incompetency of management in handling the situation that you can infer that the attempted contract was thwarted. But there is no case law that you can find that says one must continue in their attempt to purchase after being called the effing N-word. The case law clearly states once an attempt has been thwarted, you do not have to continue any further. And that makes sense because if your rights are violated, why would you hang around? There's no more questions, Your Honor. I'll posit this question or make this statement regarding the facts of this case. And we'll just simply say enough is enough. Thank you. Thank you, Counsel. The court will take this matter.